IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

vs.                                              Civ. No. 07-301 WJ/ACT

ARG ENTERPRISES, INC., d/b/a
BLACK ANGUS,

        Defendant.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment filed September 9, 2008 [Doc. 58] and Plaintiff EEOC's Motion for Partial Summary Judgment as to any Defenses Based Upon Conciliation filed September 9, 2008 [Doc. 56]. Upon review of the pleadings and the relevant law the Court finds that Defendant's Motion for Summary Judgment should be granted and Plaintiff's EEOC's Motion for Partial Summary Judgment as to any Defenses Based Upon Conciliation should be denied as moot.

The Court will begin with a brief discussion of the pleadings relied upon in making its proposed findings and recommended disposition on Defendant's Motion for Summary Judgment. The parties agreed that Plaintiff would be allowed a seven-page extension of the page limit for its response brief. The Court entered an Order allowing Plaintiff to file a thirty-one page response brief

---

[1] An Order of Reference was filed on March 12, 2009 [Doc No. 98].

on September 24, 2008 [Doc. 65].  Plaintiff filed its response on September 25, 2008 [Doc. 67].  Plaintiff filed a thirty-one page response and attached as an exhibit a twelve-page document entitled "Plaintiff's Statement of Facts" [Doc. 66].  Defendant filed an Expedited Motion to Strike Plaintiff EEOC's Response to Defendant's Motion for Summary Judgment asserting that "Plaintiff's Statement of Facts" violated D.N.M.LR-Civ. 56(b) and the Court's Order [Doc. 86].  The Court agreed and ordered that "Plaintiff's Statement of Facts" be stricken and allowed Plaintiff to refile its response no later than December 22, 2008 [Doc. 86].  Plaintiff filed a "Revised Response" on December 22, 2008 [Doc. 89].  Defendant filed a reply on January 14, 2009 [Doc. 91].  On March 19, 2009, Defendant sent a letter to the Court with an attached opinion by the Fifth Circuit Court of Appeals, *Paul v. Northrop Grumman Ship Systems*, No. 08-30443, filed February 5, 2009.  The Court filed this letter and the opinion as a "Supplemental Brief" on April 1, 2009 [Doc. 101].  Plaintiff responded on April 6, 2009 [Doc. 103] and Defendant replied on April 8, 2009 [Doc. 104].  The Court has considered Defendant's Motion for Summary Judgment and Memorandum in Support, Plaintiff's Revised Response, Defendant's Reply, Defendant's Supplemental Brief, Plaintiff's Response and Defendant's Reply.

**Summary judgment standard**.

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (citation omitted). Upon meeting that burden, the non-moving party

must "identify specific facts that show the existence of a genuine issue of material fact." *Id.* at 1164.

For the purposes of summary judgment, the Court will assume the evidence of the non-moving party to be true, will resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-moving party, and draw all inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**Introduction**.

The EEOC brings this action on the behalf of four former male employees of Defendant: Brett Powers ("Powers"), Bryan Jepsen ("Jepsen"), George Keller ("Keller"), and Joseph Mahon ("Mahon"). Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of 1964. Specifically Plaintiff alleges that Powers, Jepsen, Keller, and Mahon were subjected to same-sex sexual harassment which created a hostile work environment.

Defendant seeks summary judgment on all of Plaintiff's claims.

**Undisputed facts material to liability**.

The following facts are undisputed. Defendant has a written "Sexual Harassment Policy" which prohibits, defines and provides examples of sexual harassment. The policy also required employees to report harassment to: (1) their supervisor or next-level manager, and (2) Human Resources.

*Powers*

Defendant hired Powers as a server on October 8, 2003. He attended an orientation where a manager reviewed the Sexual Harassment Policy with him, which he acknowledged he received, reviewed and signed. Brandon Hunton ("Hunton") was hired or rehired as a server by Defendant

on June 9, 2004. After Hunton was hired, Powers alleges he was subjected to the following sexual harassment until Powers resigned on July 14, 2005:

a. Powers "guessed" that Hunton made less than ten comments about "his butt" that were "in the idea that I would have a sweet little prison ass."

b. Powers alleges that Hunton would "randomly put his thumb between my butt checks" which occurred "about once to three times a week" and lasted "[p]robably for less than a second." [Doc. 59 at Exh. C, p.100, lines 1-3.]

c. In January of 2005, Powers and Hunton were involved in a physical altercation in which Hunton kicked Powers in the thigh. Powers alleges that Hunton called him "a little pussy" and "gay faggot." Hunton was suspended for a week-end and removed from closing shifts for thirty days. He earned the most tips during closing shifts.

d. On July 14, 2005, Hunton walked up behind Powers and "positioned himself to – to where his penis would be behind my butt checks, and thrust his hips into my butt, and then he whispered something in my ear." [*Id.* at 182, lines 14-17.] The incident lasted less than two seconds. After this incident, Powers never returned to work.

Powers testified that Hunton sexually harassed female workers:

a. "One afternoon, I walked around the corner, into the kitchen, and I saw Brandon Hunton walk up to Alex Black. His back was toward me, and she was facing me. And he just started groping her and feeling her up. And she told him to stop and leave her alone, as he grabbed her breasts and he grabbed her butt and she pushed him away." [*Id.* at 88-89, lines 23-25, 1-5.]

b. Hunton made comments to female staff referring to their "butts" as well as "breasts." Id. at 89, line 18.

c. Amber, a female employee complained to Powers that Hunton "walked up and grabbed her breast and asked about having sex that night." [*Id.* at 91, lines 8-10.]

*Jepsen*

Jepsen was hired as a buser on November 24, 2004. His last day at work was June 27, 2005. He attended an orientation where a manager reviewed the Sexual Harassment Policy with him, which he acknowledged he received, reviewed, signed and understood.

Jepsen testified to the following incidents of alleged sexual harassment:

4

a. On several occasions, Hunton started "humping" his leg. These incidents lasted a "few seconds." [Doc. 59 at Exh. G, p. 82, lines 14-16; p. 99, lines 12-17.]

b. "[P]retty much on a daily basis, Hunton would "stick stuff up my butt or slapping or grabbing my butt" for a few seconds. [*Id.* at p. 83, lines 22-25 top. 84, lines 1-8.]

c. Jepsen alleges Hunton once asked if he "liked roast beef" and then lifted his apron to show his testicles. [*Id.* at 82, lines 18-25 to 83, line 1.]

d. An individual named Paul Romero ("Romero) tried to pinch his nipples every shift he worked. [*Id.* at 107, lines 5-13.]

Jepsen testified that he saw Hunton grab Powers' butt on occasion. [ *Id.* at 120, lines 15-23.] Jepsen testified that Hunton also harassed female employees. He testified that Hunton sexually harassed both male and female employees "but more so towards men." [*Id.* at 52, lines 1-14.] He further testified that he saw Hunton grab the butt of women but was "more along the lines of flirting than anything else." [*Id.* at 133, lines 11-14.]

*Keller*

Keller was hired as a buser on April 26, 2005, and resigned on July 17, 2005. He testified that he was probably given a Sexual Harassment Policy when he was hired and that he reviewed it. He understood that if he was sexually harassed, he should report it to Human Resources.

Keller testified to the following incidents of alleged sexual harassment:

a. Hunton made "sexual jokes" to him but he only remembers one remark to the effect, that "if I were in prison while you were there, I know what I would do." [Doc. 59, Exh. K at p. 41, lines 1-6.] He made approximately 20 to 25 sexual remarks. [Doc. 89, Exh. 7 at 54, lines 21-23.]

b. Hunton would stand behind him at the computer and "kind of undress you with his eyes." [Doc. 59, Exh. K. at 42, lines 2-5.]

c. Hunton would "wrap is arm around my shoulder and stand by me" on three or four occasions. [*Id.* at 62, lines 6-10.]

5

Keller also testified that he did not know if he was harassed because he was male and he did not believe he was discriminated against because he was male. [*Id.* at 27, lines 21-25.]

### *Mahon*

Mahon was hired by Defendant on September 25, 2005, and voluntarily resigned on January 18, 2007. Mahon was given the Sexual Harassment Policy which he reviewed and signed.

Mahon testified to the following alleged sexual harassment:

a. Martin Montano ("Montano"), a supervisor, slapped his buttocks "almost daily." [Doc. 59, Exh. L at 50, lines 1-3.]

b. Montano also told him "perverted jokes." [ *Id*. at 49, lines 15-19.]

c. Montano gave Mahon a nametag that read "Way to EZ Joe." [Doc. 89 at Exh. 14].

d. Tim Mason, a general manager, told "verbal jokes and said things "like things about women in the restaurant and the attractiveness in the hostesses and putting enough fish in a barrel for me to shoot at...." over a hundred times. [Doc. 59, Exh. L at 55, lines 7-15; 60, lines 8-12.]

Mahon testified that Montano would also tell a cleaned up version of dirty jokes to females. [ *Id.* at 61, lines 21-25.]

### *Charges of Discrimination*

On July 20, 2005, Powers filed a Charge of Discrimination alleging sex discrimination, which alleged in part:

> Since on or about January 2005 I have been subjected to a hostile work environment, derogatory and unwelcome sexual gestures, touching, and comments, and being physically hit and threatened by, but not limited, to a server. On or around 1/9/05 I reported this behavior to mgmt in Albuquerque and in Phoenix. On or about 1/12/05, this same coworker was promoted to Bartending and in a couple of months was promoted to Manager on Duty. The atmosphere became worse and everyone was intimidated by this Manager.

[Doc. 59, Exh. N-1.]

6

On July 21, 2005, Kim George ("George"), a female, filed a Charge of Discrimination alleging sex discrimination.  Using almost identical language as Powers, she alleged in part:

> Since on or about January 2005, I and others have been subjected to a hostile work environment, derogatory and unwelcome sexual gestures, touching and comments, and threatened by, but not limited to, a server and management.  On or about 1/12/05, this same coworker was promoted to Manager on Duty and the atmosphere became worse and everyone was intimidated by this Manager.

[*Id.* at Exh. N-2.]

On July 16, 2006, the EEOC issued a Dismissal and Notice of Rights on the charge submitted by George. The EEOC determined it was "unable to conclude that the information obtained establishes violations of the statutes." [*Id.* at Exh. O.]  In response to Power's Charge, on September 19, 2006, the EEOC found "reasonable cause" to believe that Defendant violated Title VII.  *Id.* at Exh. P.

**Hostile work environment based on sexual harassment**.

*Law*

Plaintiff alleges the creation of a hostile work environment based on sexual harassment. Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges, because of such individual's...sex."  42 U.S.C. §2000e-2(a)(1)(2006). Prohibited discrimination includes subjecting an employee to a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986); *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1262 (10th Cir. 2005).

The Supreme Court recognized that same-sex harassment is actionable under Title VII. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).  To establish the existence of a hostile work environment based on same-sex harassment under Title VII, a plaintiff must show (1) that he was a member of a protected group; (2) that he was subject to unwelcome harassment;

(3) that he was discriminated against because of his sex; and (4) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of his employment and created an abusive working environment.  *Dick*, 397 F.3d 1262-63.

In *Oncale,* the Supreme Court also recognized that there are important differences between same-sex and opposite sex discrimination as to inferences that can be drawn from a harasser's conduct.  While "[c]ourts and juries have found the inference of [gender] discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity," *Oncale,* 523 U.S. at 80, the inference is not as easy to draw in a same-sex case.  *Dick* 397 at 1263 ("[Workplace harassment 'is not automatically discrimination because of sex merely because the words used have sexual content or connotations.'" citing *Oncale*, 523 U.S. at 80).; *McCown v. St. John's Health System*, 349 F.3d 540, 543 (8th Cir. 2003) ("Same-sex harassment claims differ from those between males and females because the latter 'typically involve[]explicit or implicit proposals of sexual activity,' which create a presumption that the underlying conduct was based on sex. (citation omitted) However, this presumption is applicable only if there is credible evidence to show that the alleged harasser is sexually attracted to the plaintiff.") "[T]he critical issue in determining whether harassment is because of sex is whether members of one sex are subjected to a disadvantage to which the other sex is not."  *Oncale*, 823 U.S. at 80.

In *Oncale*,  the Court articulated three possible evidentiary routes by which a plaintiff in a same-sex case may prove that "the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimina[tion]...because of sex."  *Oncale*, 823 U.S. at 81.  First, Plaintiff may show that the harasser was motivated by sexual desire.  *Id.* at 80.  Though not required, this may be shown if there is credible evidence that the harasser is homosexual.  *Id.*; *Dick*,

397 F.3d at 1265.  Second, a plaintiff might prove that he was harassed because of his sex if he demonstrates that the harasser's conduct was motivated by hostility to the presence of the same gender in the workplace. Id. ("[W]hen a woman harasses another woman in such sex-specific and derogatory terms...as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace.") The third avenue is if the plaintiff produces comparative evidence showing that his harasser treated women and men differently in a mixed-sex work environment. *Id.* at 80-81.  These avenues are not exhaustive.  This burden also may be borne by showing that the harasser was acting to punish the plaintiff for not complying with gender stereotypes.  *Medina v. Income Support Div. Of New Mexico*, 413 F.3d 1131, 1135 (10th Cir. 2005) (citation omitted).

### *Discussion*

The Court will address the specific claims of the four males below.  In summary, the testimony of the four males provides no allegations consistent with any of the three scenarios outlined in *Oncale*, or in any manner, to create the inference that the conduct of Hunton, Romero, Mason or Montano was directed at them because of their gender. The testimony of the four males does not provide any evidence of the harasser's motivation.  There is no evidence of any sexual solicitation, proposition or desire.  Plaintiff's reliance on touching of intimate parts of the body and the four males perceptions are insufficient to demonstrate there is a material issue of fact as to whether the harassment was motivated by sexual desire.  As to the second avenue, Plaintiff relies on one statement by Hunton to prove that Hunton was hostile to males.  This again is insufficient. As to the third avenue there is evidence is that Hunton harassed females. Plaintiff's argument that because females were harassed differently than males, it has proven the harassment against males was based on sex is not supported by the law or the facts of this case.

*Powers*

Powers provides no allegations consistent with any of the three scenarios outlined in *Oncale*, or in any manner, to create the inference that the conduct of Hunton was directed at Powers because of his gender. The evidence is to the contrary. There is no evidence that Hunton was motivated by sexual desire. There is no evidence that Hunton is homosexual. Plaintiff relies on the fact that there was touching of intimate parts of Powers body by Hunton. *Dick*, 397 F.3d at 1266 ("Ms. Hinkle touched, on more than one occasion, one of the most intimate parts of Ms. Dick's body–an act seldom carried out without some sort of sexual motivation.) However, in the *Dick* case, the harassers were engaged in same-sex sexual conduct with other people in the workplace.[2] Id. ("[E]vidence showing that harasser made same-sex sexual advances to others in the workplace suggests that the conduct directed toward the plaintiff resulted from sexual interest. (citation omitted)." There is no evidence of any same-sex sexual conduct at the restaurant. To the contrary, the evidence demonstrates that Hunton also touched intimate parts of at least two females and asked one to have sex with him.

Plaintiff asserts that Hunton was motivated by a general hostility toward males. Plaintiff relies on the allegation that during a physical altercation, Hunton called Powers "a little pussy" and "gay faggot." This single incident, in the context of other specifically re-counted incidents that do not raise an inference that he was being targeted because of his failure to confirm to gender stereotypes, is not sufficient to support Powers' Title VII claim. *Ianetta v. Putnam Investments*, 183 F. Supp. 2d 415, 423 (D. Mass. 2002) (finding plaintiff failed to show harassment "because of sex" by alleging two instances of being called a "faggot").

---

[2]Plaintiff appears to argue that because Hunton harassed more than one man he was engaged in same-sex sexual conduct with others in the workplace. This is not same-sex conduct and unlike the facts in the *Dick* case, there is no evidence of same-sex sexual conduct by any harassers in this matter.

### *Jepsen*

Similarly, Jepsen's allegations are not consistent with the scenarios in *Oncale* and Jepsen has not demonstrated that Hunton's conduct towards Jepsen was because of his gender. Jepsen testified that Hunton also harassed female employees. He testified that Hunton sexually harassed both male and female employees "but more so towards men." He further testified that he saw Hunton grab the butts of women but was "more along the lines of flirting than anything else." Jepsen was not "exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed" as mandated by *Oncale*, 523 U.S. at 80.

### *Keller*

Keller's testimony does not demonstrate that Hunton's conduct gave rise to any inference that Hunton was sexually harassing him. Keller testified that Hunton told him jokes of a sexual nature; undressed him with his eyes and wrapped his arm around his shoulder. There is no evidence that Hunton's conduct was motivated by sexual desire; that Hunton did not want men in the workplace; or that he treated women any differently. Keller did not provide any evidence as to how Hunton conducted himself in front of female employees. Most importantly, Keller testified that he did not know if he was harassed because he was male and he did not believe he was discriminated against because he was male.

### *Mahon*

Similarly, Mahon's testimony does not support an inference that he was harassed because of his sex. Mahon testified he was sexually harassed by two supervisors, Montano and Mason. Montano slapped his buttocks, told him perverted jokes and gave me a nametag that read "Way to EZ Joe." Mason told him jokes about women. There is no evidence that his harassers were

motivated by sex, that they did not want men in the work place or that they treated women any differently.

*Conclusion*

Reading the record in a light most favorable to the Plaintiff, the Court assumes that four male employees were subjected to multiple incidents of harassment. The alleged behavior was crude, vulgar, and boorish. However, this is insufficient to state a claim of same-sex sexual harassment under Title VII. "Title VII does not prohibit all verbal or physical harassment" and is not "a general civility code for the American workplace." *Oncale*, 523 U.S. at 80. Title VII prohibits discrimination, not vulgarity. *Pedroza v. Cintas Corporation, No. 2*, 397 F.3d 1063, 1069 (8th Cir. 2005) (finding in a same-sex harassment suit that grabbing Plaintiff's face and attempting to kiss her on the mouth and cheek; attempting to hold Plaintiff's hand, pointing to her own buttocks and telling Plaintiff to kiss it; saying "kiss my ass", blowing kisses; and saying she did not have a husband and wanted Plaintiff was not evidence of sexual desire.); *McCowan*, 349 F.3d at 541-43 (finding that harassment was not motivated by sexual desire where the victim suggested the harasser was "just trying to irritate," and the harasser grabbed the victim on the waist, chest, and buttocks, pressed against the victim in simulated intercourse, and attempted to put objects in the victim's anus). As the record is barren of proof that the harassers' alleged conduct, albeit improper, was motivated by sexual desire or sexual prejudice, Plaintiff's claims must fail.

In addition, the evidence is that Hunton harassed males and females and one female made similar complaints to the EEOC concerning Hunton. *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 262 (4th Cir. 2001) ("This fact undercuts [Plaintiff's] claim to a substantial extent."). Plaintiff has not borne its burden to demonstrate there is a issue of material fact as to whether these four male employees were harassed because of their sex.

**Constructive discharge**.

Finally, the Court will recommend that summary judgment be granted as to Powers' claim of constructive discharge. Plaintiff stated in its response brief that "Defendant does not pursue summary judgment on EEOC's claim that Brett Powers was constructively discharged, Complaint ¶7(b), therefore, that claim is not addressed in this response." [Doc. 89 at ftnt. 2.] This is true. However, since Plaintiff has failed to show that a genuine issue of material fact exists as to his hostile work environment claim, Plaintiff cannot rely on a hostile work environment theory to support a constructive discharge claim. *James v. Platte River Steel Co.*, 113 Fed. Appx. 864 (10th Cir. 2004); *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1174, ftnt. 19 (10th Cir. 2007) (Plaintiff sought relief under a constructive discharge theory relying on a hostile work environment that was so abusive she had no choice but to resign. After affirming the district court's grant of summary judgment, the court held that plaintiff's constructive discharge "claim is inexorably linked to her hostile work environment claim, for the same reasons that claim has fallen, so too must this one.") "Constructive discharge is essentially an aggravated hostile work environment." *Trujillo v. Huefano County Board of County Commissioners*, 2008 WL 5101482 (D. Colo. 2008); *Newland v. Stevinson Toyota East, Inc*. 505 F. Supp. 2d 689, 699 (D. Colo. 2007) ("Fatally to Plaintiff's arguments, constructive discharge requires 'something more' than pervasive sexual harassment.")

## RECOMMENDED DISPOSITION

I recommend finding that Defendant's Motion for Summary Judgment be granted and that Plaintiff's Complaint filed March 28, 2007, be dismissed with prejudice. I also recommend that Plaintiff EEOC's Motion for Partial Summary Judgment as to any Defenses based upon Conciliation be denied as moot.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(c). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(c), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas N.W., Albuquerque, New Mexico 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**