IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.                                                                                      No. 07-CV-301

ARG ENTERPRISES, INC., d/b/a BLACK ANGUS,

    Defendant.

## MEMORANDUM ORDER AND OPINION ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court upon Plaintiff's Objections (Doc. 114) to the Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 111). Having considered the parties' briefs and the applicable law, I find that Plaintiff's objections are not meritorious. Accordingly, the Court overrules the objections and adopts the Magistrate Judge's recommendation that the Defendant's Motion for Summary Judgment be granted and the Plaintiff's Complaint be dismissed with prejudice.

### PROCEDURAL BACKGROUND

The U.S. Equal Employment Opportunity Commission ("EEOC") filed this suit on behalf of four former male employees of the Black Angus steakhouse restaurant, alleging that all four—Brett Powers, Bryan Jepsen, George Keller and Joseph Mahon—were subjected to same-sex harassment in violation of Title VII of the Civil Rights Act of 1964. The EEOC also alleged that Powers had been constructively discharged as a result of the sex discrimination he suffered. The Defendant filed a Motion for Summary Judgment and this Court referred the case to a magistrate judge. (Doc. 98). On May 28, 2009, the Magistrate Judge recommended granting the

Defendant's motion, finding that no genuine issues of material fact exist and the Defendant is entitled to judgment as a matter of law. (Doc. 111). The Magistrate also recommended granting summary judgment in favor of Defendant on the Plaintiff's claim of constructive discharge. The Plaintiff filed timely objections to the Magistrate's Proposed Findings and Recommended Disposition. (Doc. 114). The Court has conducted a de novo review of the pleadings, Proposed Findings and Objections in this case.

## FACTUAL BACKGROUND

The Magistrate Judge set forth the undisputed facts in this case in his Proposed Findings. In order to provide context for this opinion, however, I will reiterate the key facts concerning each of the four employees. At the summary judgment stage, the Court views all facts in the light most favorable to the Plaintiff.

Powers. Powers worked as a server for Defendant. From June 2004 until July 2005, Powers alleges that Brandon Hunton, another server, harassed him on multiple occasions including: (1) calling him a "pussy" and a "gay faggot" during a fistfight; (2) making less than 10 comments about his "butt" such as telling him he would have "a sweet little prison ass"; (3) putting his thumb between Powers' butt cheeks for "less than a second" about one to three times a week; and (4) on one occasion, walking up behind Powers and "thrust[ing] his hips into [Powers'] butt."

Jepsen. Jepsen worked as a buser for Defendant from November 2004 to June 2005. He alleges that Hunton: (1) "hump[ed]" his leg on more than 10 occasions; (2) slapped his buttocks or "st[u]ck stuff up [his] butt" almost every day; and (3) on one occasion, asked Jepsen if he "liked roast beef" before lifting up his apron to show his testicles. Jepsen also testified that another employee named Paul Romero tried to pinch his nipples during every shift they worked

together.

Keller.  Keller worked as a buser for Defendant from April 2005 to July 2005.  He claims that Hunton: (1) would occasionally "undress him with his eyes"; (2) made 20 to 25 sexual remarks or jokes, including telling Keller that if they were in prison together, he "kn[e]w what [he] would do"; and (3) on three or four occasions, stood next to Keller with his arm around Keller's shoulder and made sexual remarks.

Mahon.  Mahon worked for Defendant from September 2005 to January 2007.  He alleges that Martin Montano, a supervisor: (1) once gave Mahon a nametag that read "Way to EZ Joe"; (2) told sexual jokes, often same-sex-related, five to ten times a week; and (3) slapped Mahon's buttocks "almost daily."  He also claims that Tim Mason, a general manager, told sexual jokes "about women in the restaurant and the attractiveness [of] the hostess and putting enough fish in a barrel for me to shoot at."

In addition, the evidence shows that female workers were not spared similar harassment. Powers saw Hunton "groping" and "feeling up" a female employee, including "grabb[ing] her breasts and grabb[ing] her butt" while she attempted to push him away.  A second female employee complained to Powers that Hunton had "walked up and grabbed her breast and asked about having sex that night."  A third female employee filed a charge of sex discrimination under Title VII against Black Angus alleging that she was subject to "derogatory and unwelcome sexual gestures, touching and comments, and threatened by . . . a server and management."[1] Powers and Jepson both testified that Hunton harassed female staff by making repeated comments about their breasts and buttocks and grabbing their "butts."  Mahon testified that

---

[1] As the Magistrate Judge noted, the EEOC dismissed this charge because it was "unable to conclude that the information obtained establishes violations of the statutes."

Mason told cleaned-up versions of dirty jokes to the female employees.

## STANDARD FOR SAME-SEX HARASSMENT UNDER TITLE VII

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Discrimination can be "because of" sex even where the harasser and the victim are members of the same sex. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998). In same-sex discrimination cases, the plaintiff may show that the discrimination occurred "because of" sex through several avenues, including evidence that: (1) the harasser was motivated by sexual desire; (2) the harasser was motivated by general hostility to the presence of the same sex in the workplace; or (3) the harasser treated men and women differently in the workplace. *Id.* at 80-81. A plaintiff may also show sex discrimination through evidence that the harasser was motived by the victims' perceived failure to conform to sex stereotypes. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250-51 (1989); *Medina v. Income Support Div. Of New Mexico*, 413 F.3d 1131, 1135 (10th Cir. 2005). Finally, any discrimination must be sufficiently severe and pervasive to alter the conditions of employment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

## ANALYSIS

The Magistrate Judge found that the four male employees were "subjected to multiple incidents of harassment" and that "[t]he alleged behavior was crude, vulgar, and boorish"—but that the allegations were ultimately insufficient to state a claim of same-sex harassment under Title VII. The Magistrate Judge analyzed the alleged conduct under each of the three evidentiary routes laid out by *Oncale*. While the Court finds that the Magistrate's analysis is sound, the Court will independently analyze the conduct under each of the *Oncale* avenues for

the sake of thoroughness.

Motivated by Sexual Desire

First, the Magistrate Judge found—and I agree—that the facts do not raise any suggestion that the harassers were motivated by sexual desire. There is no credible evidence that Hunton, Romero, Montano or Mason were homosexual. *See Oncale*, 523 U.S. at 80 (evidence that the harasser is homosexual coupled with proposals of sexual activity raises inference that harasser was motivated by sexual desire). Furthermore, while the plaintiff need not always prove the harasser was homosexual to establish discrimination through this route, *see Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1265 (10th Cir. 2005), there is no independent evidence that any of the harassers were motivated by sexual desire. None of the alleged conduct can fairly be described as "explicit or implicit proposals of sexual activity," *Oncale*, 523 U.S. at 80, or as "an earnest sexual solicitation." *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 261 (4th Cir. 2001). The EEOC points out that the harassers frequently and repeatedly touched the victims' buttocks in various ways, noting that the Tenth Circuit has stated that the act of touching "one of the most intimate parts of [the victim's] body [is] seldom carried out without some sort of sexual motivation." *Dick*, 397 F.3d at 1266. In that case, however, the harasser engaged in same-sex sexual conduct with other people in the workplace, which added credence to the inference that the touching was motivated by sexual desire. *Id.*[2] Here, there is no such evidence that any of the harassers engaged in same-sex sexual conduct. The EEOC also asserts

---

[2] In its objections, the EEOC inexplicably asserts that "the Magistrate erred in concluding that the *Dick* case harassers were engaged in same-sex conduct with other people in the workplace." In fact, the Tenth Circuit explicitly states that the harasser "engaged in same-sex sexual conduct with other people in the workplace" including rubbing another employee's crotch while asking if she liked it and locking herself in a room with an openly gay coworker. *Id.*

that the existence of multiple male victims is indicative of sexual desire.  On its own, however, that fact cannot support a finding that the harassers were motivated by sexual desire; to have any force, it must be coupled with actual evidence of sexual solicitation or desire.  Notably, in a case with strikingly similar facts, the Eighth Circuit held that the behavior at issue was better characterized as "crude gender-specific vulgarity" but not discrimination on the basis of sex. *McCown v. St. John's Health System, Inc.*, 349 F.3d 540, 543 (8th Cir. 2003) (noting that the harasser repeatedly grabbed the victim's buttocks, ground his genitals against the victim's buttocks in simulated intercourse, made numerous lewd comments and attempted to stick objects into the victim's anus).  I agree and hold that the EEOC has failed to put forth evidence that the harassers were motivated by sexual desire.

Motivated by Hostility to Same Gender in Workplace

Next, the Magistrate Judge correctly found that the allegations do not show that the harassers were motivated by hostility to other men in the workplace.  The fact that Hunton called Powers a "little pussy" and a "gay faggot" during a physical altercation and repeatedly touched the victims' buttocks in an offensive manner does not suggest that Hunton did not want men to work at Black Angus.  Likewise, Montano did not exhibit hostility towards men by telling same-sex sexual jokes.  These incidents are not so "sex-specific and derogatory . . . as to make it clear that the harasser is motivated by general hostility to the presence of [men] in the workplace." *Oncale*, 523 U.S. at 80.

Motivated by Failure to Conform to Sex Stereotypes

Relatedly, the EEOC argues that the harassers were motived by the victims' perceived failure to conform to sex stereotypes—a valid method of showing of sex discrimination under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250-51 (1989) (holding that evidence of sex

stereotyping may qualify as discrimination because of sex in violation of Title VII).  As evidence of this kind of sex discrimination, the EEOC points again to Hunton's use of derogatory labels during his fistfight with Powers, as well as Hunton's generally "threaten[ing]" and "intimidat[ing]" behavior.  However, calling the victim a "pussy" and "gay faggot" on one occasion is insufficient to show sex stereotyping, and there is no evidence that Hunton's allegedly threatening behavior stemmed from Hunton's belief that Powers was not masculine enough.  *See Ianetta v. Putnam Investments*, 183 F. Supp. 2d 415, 423 (D. Mass. 2002) (finding plaintiff failed to show discrimination because of sex by alleging two instances of being called a "faggot").  Furthermore, the sexually explicit name-calling occurred during a fistfight between the two employees.  There is no evidence that the name-calling was anything other than "simpl[e] expressions of animosity or juvenile provocation" rather than evidence of his general hostility toward men in the workplace.  *Johnson v. Hondo, Inc.*, 125 F.3d 408, 412 (7th Cir. 1997).

Treated Men and Women Differently

The real question in this case is whether the EEOC has put forward enough evidence to raise a material issue of fact about whether the harassers in this case treated men and women differently.  "A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."  *Oncale*, 523 U.S. at 80-81.  While the perpetrators in this case undeniably harassed both men and women, the EEOC contends that the harassment of men was objectively worse and more offensive than that of women.  I agree with the Magistrate Judge that the EEOC has failed to make a sufficient showing under this avenue as well.

First, there is plenty of evidence that Hunton and the other harassers were "equal

7

opportunity harassers," *see Holman v. Indiana*, 211 F.3d 399, 403-04 (7th Cir. 2000), and that the women in the office suffered substantially the same kind of treatment as the men. The EEOC does not dispute that Hunton repeatedly slapped or grabbed the buttocks of female employees, that Powers saw Hunton "groping" and "feeling . . . up" one female employee, or that another female employee complained that Hunton grabbed her breasts and asked her for sex. Jepsen also testified that Hunton harassed female employees "but more so toward men" and that Hunton's actions in grabbing women's buttocks were "more along the lines of flirting than anything else." The EEOC asks this Court to rely on Jepsen's characterization of Hunton's actions to the exclusion of the rest of the evidence. While the Court views the facts in the light most favorite to the plaintiff at the summary-judgment stage, the Court must also consider the totality of the circumstances and the fact that Hunton's specific actions toward women, such as repeatedly touching their breasts and buttocks, are undisputed. The EEOC also makes much of the fact that "Hunton did not stick thumbs up the buttocks of women." While true, that is beside the point. Hunton repeatedly harassed the female staff at Black Angus; it does not matter that he did not harass them using the same methods as long as his harassment of both sexes was severe and pervasive. In fact, Hunton harassed women in ways that he did not harass men—such as grabbing their breasts and, at least on one occasion, asking a female coworker for sex. In sum, there is sufficient undisputed evidence that Hunton indiscriminately abused his co-workers regardless of their gender. Therefore, the EEOC's claim that the four male victims were harassed on account of their sex must fail.

Second, at least with regards to Keller and Mahon, the harassment they suffered was neither severe nor pervasive. In order to make out a claim of sex discrimination based on a hostile work environment, the EEOC must show that the discrimination was so objectively

offensive that it altered the terms and conditions of the victim's employment. *Pinkerton v. Colorado Dep't of Transportation*, 563 F.3d 1052, 1058 (10th Cir. 2009). In determining whether behavior is sufficiently severe or pervasive, courts consider "the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007). Most of the harassment against Keller and Mahon consisted of isolated incidents and sexually-tinged remarks or jokes. Keller complained that Hunton would occasionally "undress [him] with his eyes", that Hunton made 20 to 25 sexual remarks or jokes, and that on three or four occasions Hunton stood next to him with his arm around him and made sexual remarks. This does not rise to the level of severe or pervasive harassment, especially considering that none of the alleged harassment was physically threatening or humiliating. Furthermore, Keller explicitly testified that he did not believe he was discriminated against because he was male, making it difficult for the EEOC to make this argument on his behalf. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) (stating, in a different context, that there is no Title VII violation if the victim does not subjectively perceive the environment to be abusive). Unlike the other three victims, Mahon does not allege that he was ever harassed by Hunton. Rather, he asserts that Montano, a supervisor, once gave him a nametag reading "Way to EZ Joe," told sexual jokes five to ten times a week, and slapped him on the buttocks "almost daily." While the daily slapping certainly constitutes physical harassment, the Court does not believe this conduct is so severe and offensive that it changed the terms and conditions of Mahon's employment. *See Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1537-38 (10th Cir. 1995) (noting that courts must evaluate the purportedly discriminatory conduct in the context of a blue-collar environment where crude language or other forms of

vulgarity may be commonly employed). Therefore, the EEOC's claims on behalf of Keller and Mahon fail for the additional reason that the alleged harassment was neither severe nor pervasive.

Constructive Discharge Claim

Finally, the EEOC objects to the Magistrate's recommendation that the constructive discharge claim should be dismissed with prejudice. This objection warrants little discussion. In its Complaint, the EEOC claims that Powers was constructively discharged because of the hostile environment he suffered. As discussed above, the EEOC has not established that Powers suffered discrimination in the terms and conditions of his employment because of his sex. Consequently, the EEOC cannot establish that a "hostile environment" existed. Without sex discrimination, there can be no constructive discharge. *See Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir. 2004) ("Constructive discharge occurs when the employer by its *illegal discriminatory* acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.") (emphasis added). The EEOC spends much paper and ink cataloging Powers' complaints to management and management's subsequent inaction. None of this is relevant, however, because the EEOC has failed to show that the Defendant engaged in illegal sex discrimination in the first place.

## CONCLUSION

This case illustrates the point made by the Supreme Court that Title VII is not "a general civility code for the American workplace . . . [and] does not prohibit all verbal or physical harassment in the workplace." *Oncale*, 523 U.S. at 80. The behavior of the harassers in this case—particularly Hunton—was offensive, vulgar and reprehensible. In fact, the victims of Hunton's harassment may well have claims under state law for criminal assault or battery. Title

VII, however, cannot give them the relief they want.  Title VII is a limited statute which only protects persons from discrimination in the terms or conditions of employment because of that person's sex.  Unfortunately, as this case illustrates, employees can be subjected to a variety of offensive and harassing behaviors which simply do not constitute discrimination because of sex.

     Accordingly, I find that the Magistrate Judge properly analyzed the facts in this case and that the Plaintiff's objections are not well-taken.  Thus, I overrule the objections and adopt the Magistrate Judge's recommendation that the Defendant's Motion for Summary Judgment be **GRANTED** and the Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

     **SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE